## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MAHALXMI HOSPITALITY, LLC,　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　　）　　Case No. 19-CV-00591-GKF-CDL
　　　　　　　　　　　　　　　　　　）
STEADFAST INSURANCE COMPANY;　　）
STARR SURPLUS LINES　　　　　　　　）
INSURANCE COMPANY;　　　　　　　　）
CERTAIN UNDERWRITERS AT　　　　　）
LLOYD'S, LONDON SUBSCRIBING TO　）
POLICY NO. B1230AP04534A17;　　　　）
NTX COMMERCIAL AGENCY, INC.　　　）
d/b/a TEXAS COMMERCIAL AGENCY;　）
BURNS & WILCOX, LIMITED; and　　　）
MCDERMOTT ROAD PARTNERS, LLC,　）
　　　　　　　　　　　　　　　　　　）
　　　　　　Defendants.　　　　　　　）

## OPINION AND ORDER

This matter comes before the court for decision on plaintiff Mahalxmi Hospitality, LLC's breach of contract claim—specifically, the issue of insurance coverage under policies issued by Steadfast Insurance Company and Starr Surplus Lines Insurance Company.

### I.　　Factual Background and Procedural History

Defendants Steadfast, Starr, and Certain Underwriters at Lloyd's, London Subscribing to Policy No. B1230AP04534A17 ("Lloyd's") issued a market insurance policy to McDermott Road Partners, LLC.  [Doc. 106-1; Doc. 106-2; Doc. 106-3; Doc. 68-1].  Steadfast issued the Zurich EDGE Policy designated number CPP0274226-00 for the policy period beginning December 15, 2017 at 12:01 a.m. and ending December 15, 2018 at 12:01 a.m. (Steadfast Policy).  [Doc. 106-1; Doc. 106-2, p. 30].  Steadfast was the lead insurer and participated at fifty percent (50%).  [Doc. 106-1; Doc. 106-2, p. 30; Doc. 112, p. 2].  Starr issued an insurance policy designated no.

SLSTPTY11012417 for the policy period beginning on December 15, 2017 and ending December 15, 2018 (Starr Policy).  [Doc. 106-1; Doc. 106-3, pp. 1, 19].  Starr participated at thirty percent (30%).  [Doc. 106-1; Doc. 106-3, pp. 1, 20; Doc. 112, p. 2].  Lloyd's issued an insurance policy designated no. B1230AP04534A17 for the policy period beginning from December 15, 2017 to December 15, 2018.  [Doc. 68-1].  Lloyd's participated at the remaining twenty percent (20%). [Doc. 108, p. 7; Doc. 112, p. 2; Doc. 68-1].  The market policy was developed by defendant Burns & Wilcox, Ltd. (B&W) and sold by defendant NTX Commercial Agency, Inc. d/b/a Texas Commercial Agency.  [Doc. 112-1; Doc. 106-2, p. 30; Doc. 106-3, p. 1; Doc. 68-1, p. 27; Doc. 108-1].  The Garnett Inn, located at 1011 S. Garnett Road, Tulsa, Oklahoma, 74128, was an insured location under the Policy.

The Starr Policy contains the following provision:

### APPLICATION OF LEAD POLICY PROVISIONS

> In respect of the perils hereby insured against this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and Limits of Liability and the renewal agreement, if any, AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the Policy(ies) of the Lead Primary Insurer(s) prior to the happening of a loss for which claim is made hereunder and should any alteration be made in the premium for the Policy(ies) of the Lead Primary Insurer(s), then the premium hereon may be adjusted accordingly.

[Doc. 106-3, p. 16, ¶ 2].  The Starr Policy defines "Lead Primary Policy" as "the policy form including all endorsements attached there to, issued by the Lead Primary Insurer, as designated and identified in The Schedule under 8(a), effective and concurrent with the term term [*sic*] of this policy."  [*Id.* at p. 16, ¶ 6(c)].  The Schedule under paragraph 8(a) identifies the Steadfast Policy as the Lead Primary Policy.  [*Id.* at p. 20, ¶ 8(a)].

On or about January 3, 2018, a water line burst, causing water damage to the Garnett Inn. [Doc. 106-4, pp. 2, 4, 10].  Mahalxmi reported the loss to Steadfast and Starr in early January of

2018. [Doc. 106-4, p. 1; Doc. 106-7, p. 3]. Steadfast, Starr, and Lloyd's retained Engle Martin & Associates, an adjusting firm, to assist them relative to plaintiff's claim. [Doc. 106-4, p. 5; Doc. 106-7].

On February 19, 2018, Engle Martin issued a Reservation of Rights letter on behalf of Steadfast, Starr, and Lloyd's.[1] [Doc. 106-7]. Therein, Engle Martin stated that, based on its investigation, the claim may implicate Property Coverage Form, IL 1201 (11/85), which it set forth as follows:

Vacancy endorsement is as follows:

    a.    Vacancy Clause:

        i.    Vacancy Exclusion applies to all properties not being operated for their reported purpose, 75% for all occupancies except 60% for Hotels occupied for more than 30 continuous days.

AND

    b.    Coverage is excluded for Hotel/Motels as follows:

        i.    If the Location is not open 24 hours per day; or

        ii.    There is not a paid employee managing the Front Desk.

[Doc. 106-7, p. 3 (Vacancy Exclusion)]. Engle Martin informed Mahalxmi that its investigation to date had indicated that the Garnett Inn "may not have been at the required 60% at the time of the loss." [*Id.* at p. 4].

---

[1] Engle Martin issued the relevant correspondence to McDermott Road Partners, the Policies' Named Insured. [Doc. 106-7; Doc. 106-8]. However, it appears to be undisputed that Mahalxmi qualified as an insured under the Policies. [Doc. 112-3, p. 4; Doc. 112-4, p. 4]. For ease of reference, the court will reference the Engle Martin correspondence as being issued to Mahalxmi unless specifically noted.

On May 1, 2018, Engle Martin sent correspondence to Mahalxmi stating that its investigation had revealed an occupancy rate of 43.64% for the month of December 2017 and a occupancy rate of 39.80% for the entire year of 2017.  [Doc. 106-8, p. 2].  Engle Martin notified Mahalxmi that the claim had been denied based on the Vacancy Exclusion.  [*Id.*].

On October 2, 2019, Mahalxmi filed a lawsuit in the District Court of Tulsa County, State of Oklahoma against Steadfast, Starr, Lloyd's, and Texas Commercial Agency, asserting claims for breach of contract, fraud, and bad faith.  [Doc. 106-10].  On November 4, 2019, Lloyd's removed the case to this court pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332.  [Doc. 2].  Lloyd's subsequently amended its pleading to assert claims against Burns & Wilcox and McDermott Road Partners.  [Doc. 49].

On February 14, 2020, Mahalxmi filed a jury demand.  [Doc. 48].  Lloyd's, Steadfast, and Starr moved to strike the jury demand.  [Doc. 51; Doc. 54].  On April 3, 2020, the court granted the motion to strike, as Mahalxmi's right to jury had been waived.  [Doc. 70].  Thus, insofar as plaintiff's claims are tried, the court will conduct a bench trial.

Shortly after removal, Lloyd's moved to bifurcate discovery related to Mahalxmi's breach of contract claim and its tort claims.  [Doc. 38].  On February 11, 2020, the court held a Scheduling Conference.  [Doc. 47].  The court granted the motion to bifurcate and directed the parties to submit the issue of insurance coverage under the policies, including the existence of any ambiguity, for decision by the court outside of Federal Rule of Civil Procedure 56.  [Doc. 81; Doc. 100; Doc. 102; Doc. 104].  Steadfast and Starr jointly submitted an Opening Brief on the Phase One issues [Doc. 106], Mahalxmi filed a response directed to the Steadfast/Starr brief as well as the Opening Brief filed by Lloyd's [Doc. 112], and Steadfast/Starr filed a reply brief.  [Doc. 115].  Thus, the First Phase is ripe for the court's determination.

The court's coverage determination in this matter does not include any opinion as to whether Steadfast or Starr acted in bad faith or committed fraud.  Nor does the court consider coverage under the Lloyd's insurance policy or the potential liability of Burns & Wilcox, Limited; McDermott Road Partners, LLC; or NTX Commercial Agency, Inc. d/b/a Texas Commercial Agency.

## II.    Applicable Oklahoma Law[2]

General principles of contractual interpretation govern the construction of an insurance policy.  *Dodson v. St. Paul Ins. Co*., 812 P.2d 372, 376 (Okla. 1991).  Thus, "[a]n insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible."  *Id.* (footnote omitted).  "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions."  *BP America, Inc. v. State Auto Prop. & Cas. Ins. Co*., 148 P.3d 832, 835 (Okla. 2005) (footnote omitted).  "[N]either forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to

---

[2] "A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state."  *Barrett v. Tallon,* 30 F.3d 1296, 1300 (10th Cir. 1994).  Under Oklahoma choice-of-law principles, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Okla. Stat. tit. 15, § 162.  "[E]ven where no place of performance is expressly stated in a contract, the controlling issue is whether the contract *indicates* a place of performance."  *ROC ASAP, L.L.C. v. Starnet Ins. Co.,* No. CIV-12-461-D, 2014 WL 667833, at *2 (W.D. Okla. Feb. 20, 2014) (emphasis in original).  Here, the parties agree that the Garnett Inn, located at 1011 S. Garnett Road, Tulsa, Oklahoma, 74128, was an insured property under the Steadfast Policy and Starr Policy.  Thus, the insurance policies indicate that Oklahoma constitutes the place of performance with respect to claims arising from the Garnett Inn.  Further, Steadfast, Starr, and Mahalxmi all rely on Oklahoma law in the First Phase briefs.  Under the circumstances, the court applies Oklahoma law to determine coverage under the Steadfast and Starr insurance policies.

import a favorable consideration to either party than that expressed in the contract." *Dodson*, 812 P.2d at 376 (footnote omitted). However, when the policy language is susceptible to two constructions, without resort to rules of construction, a genuine ambiguity exists and the contract must be construed in favor of the insured and against the insurance carrier. *Id.* at 376-77.

Oklahoma law "upholds coverage exclusions where policy language is clear and unambiguous." *BP America, Inc.*, 148 P.3d at 837; *see also Haworth v. Jantzen*, 172 P.3d 193, 197 (Okla. 2006) ("When an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctively reveals its stated purpose."). Of policy exclusions, the Oklahoma Supreme Court has stated:

> The policy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage. In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.

*Dodson,* 812 P.2d at 377 (internal footnotes omitted).

### III.    Analysis

Steadfast and Starr raise two primary arguments in the First Phase. First, Steadfast/Starr argue that Mahalxmi's breach of contract claim is time-barred. Second, the insurers contend that the Vacancy Exclusion precludes coverage. The court separately considers each argument.

*A.    Time Bar*

Steadfast and Starr argue that Mahalxmi's breach of contract claim is time barred by both statute and contract. With respect to the statutory limitation, the insurers direct the court to title 36, section 4803 of the Oklahoma Insurance Code. As for the contractual limitation, the Steadfast Policy includes the following provision:

6.13.05        SUIT AGAINST THE COMPANY

- 6 -

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy.  Legal action must be started within (12) twelve months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

If under the laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

[Doc. 106-2, p. 70].  The court first considers the statutory bar.

Section 4803 applies to standard fire insurance policies and states "no policy or contract of fire insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in the state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy."  Okla. Stat. tit. 36, § 4803(B).  One such provision requires that  "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, *and unless commenced within twelve months next after inception of the loss*."  Okla. Stat. tit. 36, § 4803(G) (emphasis added).   Thus, "[s]ection 4803 mandates the terms to be contained in all policies of fire insurance, including a one year statute of limitation."  *Walton v. Colonial Penn Ins. Co.*, 860 P.2d 222, 224 (Okla. 1993); *see also Ins. Co. of N. Am. v. Bd. of Educ. of Ind. Sch. Dist. No. 12*, 196 F.2d 901, 903 (10th Cir. 1952) ("In Oklahoma the parties to a fire insurance policy are not free to contract as to the period of time within which an action must be brought.  The one year statutory period of limitation is by operation of law made a part of the contract."); *Miller v. St. Paul Fire & Marine Ins. Co.*, 480 F. Supp. 32, 33 (W.D. Okla. 1979) ("The twelve-month limitation provided in the standard fire insurance policy for Oklahoma is a statutory rather than contractual period of limitation.").  However, the statute is inapplicable to

"vehicle insurance, casualty insurance or inland marine insurance, []or to reinsurance."  Okla. Stat. tit. 36, § 4801(A).

Mahalxmi argues that § 4803 is inapplicable because the claimed loss is a casualty loss and, further, the Steadfast and Starr Policies are not standard fire insurance policies.  At the outset, it is not certain that the Steadfast/Starr insurance policies qualify as standard fire insurance policies.  The insurers do not direct the court to any form in the policies designating them as such. *Cf.* Okla. Stat. tit. 36, §§ 4803(E), (G).  Further, the form standard fire insurance policy is a "named perils" policy whereas, with respect to the coverage at issue, the Standard/Starr policies are "all-risk" policies.[3]  *See generally* 10A Steven Plitt, et al., COUCH ON INSURANCE § 148:50 (3d ed. June 2021 update); *Okla. Schs. Risk Mgmt. Tr. v. McAlester Pub. Schs.*, 457 P.3d 997, 1002 (Okla. 2019) ("Generally, most property insurance is often classified as (1) An 'all-risk' policy covering a loss when caused by any fortuitous peril not specifically excluded by the policy; or (2) A 'named-perils' policy covering only losses suffered from a peril enumerated in the policy.").  The appraisal provisions differ significantly.  *See generally Wagnon v. State Farm Fire & Cas. Co.*, 951 P.2d 641, 643 (Okla. 1997) ("An examination of the policy reveals that it bears little, if any, resemblance to the 'Standard Fire Insurance Policy' found in 36 O.S.1991, § 4803(G).").

Regardless, it is clear that, as permitted by § 4803, the Steadfast/Starr policies provide coverage for perils other than those expressly contemplated in the Oklahoma standard fire insurance policy—that is, fire and lightning.  *See* Okla. Stat. tit. 36, §§ 4803(C), (G).  In *Wagnon*

---

[3] The Steadfast and Starr policies provide coverage for "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location described in Section II-2.01."  [Doc. 106-2, p. 31]; *see also* [Doc. 106-3, pp. 16, 19].  "Covered Cause of Loss" means "[a]ll risks of direct physical loss of or damage from any cause unless excluded."  [Doc. 106-2, p. 76].

*v. State Farm Fire and Casualty Co*., the Oklahoma Supreme Court considered the applicability of § 4803's one-year statute of limitations under factually analogous circumstances.  There, the insureds purchased a homeowners insurance policy that provided coverage for "accidental direct physical loss to property" caused by seventeen specified perils, including fire or lightning and theft.  951 P.2d at 643, 643 n.3.  The insureds made a claim under the policy's coverage for theft, which the insurer denied.  The insureds sued for breach of contract and the insurer sought summary judgment arguing that the insureds failed to bring suit within one year as required by § 4803(G).  *Id.* at 642.  The court denied the motion, awarded judgment to the insureds, and the insurer appealed.  *Id.*  On appeal, the Tenth Circuit certified the following question to the Oklahoma Supreme Court:

> Whether theft coverage in a homeowners/renters' insurance policy, which also insures against loss by fire and lightning, is subject to the one-year statute of limitations prescribed for fire insurance policies under section 4803(G) of title 36 of the Oklahoma Statutes, in light of the restrictions found in title 36, section 3617 of the Oklahoma Statutes, when such coverage falls both within the definition of property insurance under title 36, section 704 of the Oklahoma Statutes, and the definition of casualty insurance under title 36, section 707 of the Oklahoma statutes.

*Id.* at 642 n.1.

To answer the certified question, the court first recognized that Oklahoma title 36, § 707's definition of "casualty insurance" specifically includes burglary and theft insurance, whereas fire falls within "property insurance."  *Id*. at 643-44.  The court then looked to section 3617 of title 36, which provides, in relevant part:

> No policy delivered or issued for delivery in Oklahoma and covering a subject of insurance resident, located, or to be performed in Oklahoma, shall contain any condition, stipulation or agreement . . . (3) limiting the time within which an action may be brought to a period of less than two (2) years from the time the cause of action accrues in connection with all insurances other than property and marine and transportation insurances; in property and marine and transportation policies such time shall not be limited to less than one (1) year from the date of occurrence of the event resulting in the loss.  Any such condition, stipulation or agreement shall be

void, but such voidance shall not affect the validity of the other provisions of the policy.

*Id.* at 644 (quoting Okla. Stat. tit. 36, § 3617). Thus, applying section 3617, "a fire policy, being property insurance, can be limited to a one-year period in which to file an action. But theft is covered as casualty insurance, which according to § 3617, cannot be limited to less than two years for bringing a court action." *Wagnon,* 951 P.2d at 644. As to the insurer's argument that § 4803's statute of limitation applied to a theft claim made under a fire insurance policy, the Oklahoma Supreme Court concluded:

> [W]e are not convinced that simply because the insurer is permitted to include coverage for perils listed under casualty insurance, that the legislature has intended the specific statute of limitations for casualty perils be ignored. If the mandates of 36 O.S.1991, § 3617 can be so easily circumvented, why would the legislature even provide for two separate statutes of limitation? We resolve the doubt in favor of the longer statute of limitation. Theft is casualty insurance and even if it is included in a "fire insurance policy," the statute of limitations for theft cannot be limited to less than two years, pursuant to 36 O.S.1991, § 3617. [The insurer] cannot, by labeling the homeowner's policy a "fire insurance policy" circumvent the legislature's specific directive forbidding insurers from limiting filing suit on casualty policies to less than two years.

*Wagnon*, 951 P.2d at 646-47 (internal footnotes omitted). Oklahoma courts have interpreted *Wagnon* "to stand for the proposition that, where the insurance policy covers losses from multiple perils, and the multiple perils are subject to different commencement-of-action periods, an action against the insurer must be commenced within the period prescribed for the particular peril causing the claimed loss." *Burwell v. Mid-Century Ins. Co*., 142 P.3d 1005, 1008 (Okla. Civ. App. 2006).[4]

---

[4] Opinions of the Oklahoma Court of Civil Appeals released for publication by that court are not precedential, but "shall be considered to have persuasive effect." Okla. Sup. Ct. R. 1.200(d)(2).

In this case, Mahalxmi has made a claim for water damage caused by a burst water line. [Doc. 106-4, pp. 2, 4]. Pursuant to *Wagnon*, the court must determine the applicable limitation period for that particular peril.

As previously stated, Mahalxmi argues that the claim constitutes a "casualty" claim and therefore § 4803's one-year statute of limitation is inapplicable. Section 707 defines "casualty insurance" to include the following:

> Leakage and fire extinguishing equipment insurance, which is insurance against loss or damage to any property or interest caused by the breakage or leakage of sprinklers, hoses, pumps, and other fire extinguishing equipment or apparatus, water pipes and containers, or by water entering through leaks or openings in buildings, and insurance against loss or damage to such sprinklers, hoses, pumps, and other fire extinguishing equipment or apparatus.

Okla. Stat. tit. 36, § 707(7). The insurers assert that § 707(7) is limited to loss or damage caused by water from the equipment or systems used to extinguish fires. [Doc. 115, p. 11]. However, Steadfast/Starr offer no case law in support of their interpretation. Rather, based on the court's research, the only court to have considered the issue concluded that a claim for damage due to the breakage of a sewer pipe causing by settling and leaking water pipes constituted a casualty claim, not a property claim. *See Thompson v. Shelter Mut. Ins. Co.*, No. CIV-06-0757-HE, 2007 WL 9710847, at *4 (W.D. Okla. July 23, 2007). Thus, application of a one-year statute of limitation under § 3617 was not permissible. *Id.* Although not binding, the decision is persuasive.

Judge Heaton's decision in *Thompson* is consistent with general rules of statutory construction. Under Oklahoma law, "the plain meaning of statutory language is conclusive, except in a rare case when literal construction produces a result which is demonstrably at odds with legislative intent." *Johnson v. CSAA Gen. Ins. Co.*, 478 P.3d 422, 432 (Okla. 2020). "There is no room for construction or provision for further inquiry when the Legislature plainly expresses its intent." *Gilbert Cent. Corp. v. Oklahoma*, 716 P.2d 654, 658 (Okla. 1986).

- 11 -

Section 707(7) first defines "casualty insurance" to include "leakage **and** fire extinguishing equipment insurance." Okla. Stat. tit. 36, § 707(7) (emphasis added). "And" is a coordinating conjunction that links "two independent ideas." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011). Thus, casualty insurance includes "leakage" insurance separate and apart from "fire extinguishing equipment" insurance. That is, the leakage need not be tied to equipment or systems used to extinguish fires.

The statute goes on to define "leakage and fire equipment insurance," in part, as "insurance against loss or damage to any property or interest caused by the breakage or leakage of sprinklers, hoses, pumps, and other fire extinguishing equipment or apparatus, *water pipes and containers*, *or by water entering through leaks or openings in buildings* . . . ." Okla. Stat. tit. 36, § 707(7) (emphasis added). "In determining the meaning of an unambiguous statute, the ordinary rules of grammar must be applied unless they lead to an absurd result." *Gilbert Cent. Corp.*, 716 P.2d at 658. Applying ordinary rules of grammar, § 707's definition is best read as a series utilizing serial, or Oxford, commas. The *Chicago Manual of Style* explains: "When a conjunction joins the last two elements in a series of three or more, a comma—known as the serial or series comma or the Oxford comma—should appear before the conjunction. Chicago strongly recommends this widely practiced usage . . . since it prevents ambiguity." *The Chicago Manual of Style*, § 6.19 (17th ed. 2017). When viewed as such, "leakage and fire extinguishing equipment insurance" means "insurance against loss or damage to any property or interest caused by the [1] breakage or leakage of sprinklers, hoses, pumps, and other fire extinguishing equipment or apparatus, [or] [2] *water pipes and containers*, *or [3] by water entering through leaks or openings in buildings*." Neither the second nor the third cause require that the damage relate to a fire extinguishing equipment. This interpretation is further supported by the serial comma in the first cause, which includes "other

fire extinguishing equipment or apparatus," clearly in reference only to those three items previously listed (sprinklers, hoses, pumps). For these reasons, the court concurs with Judge Heaton that, based on the plain meaning of the statutory language, "[t]here is nothing in the words used or in the sentence structure to support an inference that the Legislature meant to refer to water pipes or leaks only in the context of firefighting equipment." *Thompson,* 2007 WL 9710847, at *3.

For the foregoing reasons, the court concludes that Mahalxmi's claim is a casualty claim. Accordingly, § 4803's one-year statute of limitations is inapplicable, regardless of whether the policies qualify as standard fire insurance policies. *See Wagnon,* 951 P.2d at 646-47. Nor can the one-year statute of limitation included in the Steadfast Policy (and incorporated into the Starr Policy) apply as § 3617 prohibits casualty insurance policies from including a condition that suit be brought within a period of less than two years. *See* Okla. Stat. tit. 36, § 3617; *Wagnon,* 951 P.2d at 647 ("[Steadfast] cannot, by labeling the . . . policy a 'fire insurance policy' circumvent the legislature's specific directive forbidding insurers from limiting filing suit on casualty policies to less than two years."). The court concludes that Mahalxmi's breach of contract claim is not barred by limitations—either statutory or contractual.

B.      *Vacancy Exclusion*

Steadfast/Starr argue that Mahalxmi's claim was properly denied pursuant to the Vacancy Exclusion included in the Steadfast and Starr Policies.

The loss occurred on January 3, 2018, on which date neither Steadfast nor Starr had issued a formal policy. [Doc. 115-21; Doc. 115-22]. But Steadfast and Starr had issued binders. *See generally* 1A Steven Plitt, et al., Couch on Insurance § 13:1 (3d ed. June 2021 update (internal footnote omitted) ("[A] binder is a written contract by a duly authorized agent of an insurance

company recognizing liability on a forthcoming contract during negotiations for the contract, and assuming that a valid or legally operative binder has been executed, it is immaterial that a loss covered by the binder occurs before the formal policy of insurance is issued."); *Midwestern Ins. Co. v. Rapp*, 296 P.2d 770, 774 (Okla. 1956).  And Steadfast issued its formal policy on January 16, 2018.  [Doc. 115-21; Doc. 115-22; Doc. 106-2].

Steadfast and Starr argue that the court must consider the formal Steadfast policy as amended, rather than the binder or the formal policy as issued on January 16, 2018.  The amended Steadfast policy included the following Vacancy Exclusion purporting to be retroactive to the Steadfast Policy's inception date of December 15, 2017:

Vacancy endorsement is as follows:

A.   Vacancy Clause:

i.   Vacancy Exclusion applies to all properties not being operated for their reported purpose, or an average occupancy rate of less than 75% for all occupancy types except **60%** for hotels/motels for more than 30 continuous days.

AND:

B.   Coverage is excluded for Hotel/Motels as follows:

i.   If the Location is not open 24 hours per day; or

ii.   There is not a paid employee managing the Front Desk.

[Doc. 106-2, p. 104 (emphasis added)].  In response, Mahalxmi argues that an insurance company cannot change a policy to exclude coverage after a loss.

As previously stated, general principles of contract construction govern the interpretation of an insurance policy.  *Dodson*, 812 P.2d at 376.  Thus, "[m]odification of insurance contracts is governed by rules applicable to contracts generally."  *Christian v. Metro. Life Ins. Co.*, 566 P.2d 445, 448 (Okla. 1977).  Under Oklahoma law, "[a] written contract may be discharged, rescinded,

altered, or changed at any time *before the performance thereof is due*, by the execution of a new agreement in writing; and, when such is done, the terms and provisions of the new agreement govern as to the rights of the parties thereto." *Gladys Belle Oil Co. v. Clark*, 296 P. 461, 462 (Okla. 1931) (emphasis added). That is, a contractual modification must precede an obligation to perform under the contract. In the insurance context, this means that "[t]he acceptance of an alteration or modification of the original contract, to be effective, must precede loss." 2 *Couch on Insurance* § 25:8 (3d ed. June 2021 update); 8 *Appleman on Ins. Law* § 50.10 ("Nor can the insurer unilaterally alter the coverage without giving any notice until after the loss occurs."); *see generally Christian*, 566 P.2d at 448.

Further, contractual modification under Oklahoma law requires mutual consent of the parties. *Indiana Nat'l Bank v. State Dep't of Human Servs.*, 857 P.2d 53, 63 (Okla. 1993); *Watt Plumbing, Air Conditioning & Elec. Inc. v. Tulsa Rig, Reel & Mfg. Co.*, 533 P.2d 980, 983 (Okla. 1975). Steadfast offers no evidence that Mahalxmi consented to a retroactive 60% vacancy exclusion.[5] Steadfast directs the court to a series of emails dated January 20, 2018 from Dallas Bacon of B&W to Jeff Davis of Texas Commercial, Mahalxmi's agent. *See generally* [Doc. 115-27]. However, there is no indication in any of the emails of consent that the endorsement would apply retroactively. Steadfast directs the court to no additional evidence.[6] Accordingly, based on

---

[5] In fact, the only evidence that anyone questioned the vacancy exclusion prior to the date of loss is an email from Dickerson asking Starr to "revisit the Vacancy Clause" and noting that the prior policy included a 40% vacancy exclusion. [Doc. 115-15].

[6] The court notes that a January 19-20, 2018 email exchange between Dallas Bacon and Erica Dickerson of B&W, and Artis Kitchen of Zurich, includes the following in the subject line: "Endt Req Eff: 12.15.17." [Doc. 115-17]. Under Oklahoma law, "[a]s many jurisdictions have said, it is a factual question as to whether a broker is the agent of the insured or of the insurer, and will be resolved according to the circumstances of each particular case." *McFarling v. Demco, Inc.*, 546 P.2d 625, 628 (Okla. 1976). The parties offer no evidence or argument as to whether Burns &

the evidence submitted, Mahalxmi did not consent to modify the Steadfast Policy to retroactively include the 60% vacancy exclusion.

Steadfast/Starr contend that the court should nevertheless enforce the 60% vacancy exclusion because it "was agreed upon and intended to be effective at policy renewal." [Doc. 115, p. 16]. It is well-established under Oklahoma law that "unless fraud or mistake is involved pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of the executed written agreement." *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985). Even assuming the Steadfast/Starr policies are ambiguous, the terms of the oral negotiations are superseded by the formal policy as issued. Steadfast and Starr do not allege fraud. Nor do they point to any mistake of law. And, insofar as Steadfast/Starr would rely on mistake of fact, no mistake exists. Oklahoma statutes define mistake of fact as follows:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:
>
> 1.   An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,
>
> 2.   Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

Okla. Stat. tit. 15, § 63. Mutual mistake "requires both parties to labor under the same misconception as to the past or present existence of a fact material to the offer." *Allison v. City of El Reno*, 894 P.2d 1133, 1136 (Okla. Civ. App. 1994). As previously stated, Steadfast/Starr offer no evidence that Mahalxmi believed the Steadfast Policy or Starr Policy included a 60% vacancy

---

Wilcox constituted Mahalxmi's agent. Thus, based on the evidence and briefs submitted, *Burns & Wilcox's* knowledge of the endorsement's purported retroactivity does not warrant judgment in Steadfast/Starr's favor.

exclusion.[7]  Further, prior to the loss, the evidence suggests that Steadfast at least understood the policy included a 40% vacancy exclusion, not a 60% exclusion.  [Doc. 115-13, p. 11 (Steadfast Binder including 40% exclusion); Doc. 115-15 (requesting 40% vacancy exclusion and stating "[a]ll of these items have been agreed upon by Zurich and London)].  There being no evidence of fraud or mutual mistake, the policies supersede any alleged prior oral agreement.

Further, Steadfast and Starr's request amounts to a request for reformation.  But Steadfast has not sought reformation in this case.  And even if Steadfast had pled reformation, it is not warranted.  Reformation requires evidence of fraud or mutual mistake that is "clear, satisfactory, [and] free from doubt."  *Nat'l Fire Ins. Co. of Hartford v. McCoy*, 239 P.2d 428, 430 (Okla. 1951).  For the reasons discussed above, Steadfast/Starr submit no such evidence.  Accordingly, the court is bound to consider the Steadfast/Starr binders in effect on the date of loss.

The Steadfast Binder included the following vacancy provision:

a.  Vacancy Clause

    i.  Vacancy Exclusion applies to all properties not being operated for their reported purpose, or less than **40% occupied** for more than 30 continuous days.

AND:

b.  Coverage is excluded for Hotel/Motels as follows:

    i.  If the Location is not open 24 hours per day; or

    ii.  There is not a paid employee managing the Front Desk.

[Doc. 115-13, p. 11 (emphasis added)].   The Steadfast Binder also included the following provision:  "In the event of any inconsistencies between the binder and the policy form referenced,

---

[7] Insofar as Steadfast/Starr would rely on statements by Dickerson of Burns & Wilcox that "all markets agreed to 60%," [Doc. 115-16, p. 2], Dickerson's statements are hearsay.

the policy language controls." [Doc. 115-13, p. 3]. The formal policy issued by Steadfast on January 16, 2018 did not include a vacancy exclusion. *See* [Doc. 106-2]. The parties have not sufficiently briefed whether the 40% Vacancy Exclusion controls or whether no Vacancy Exclusion applies.

Prior to the date of loss, Starr issued a binder that included a vacancy exclusion applicable to "all properties not being operated for their reported purpose, or less than 75% occupied for more than 30 continuous days." [Doc. 115-14, p. 7]. However, the Starr Binder included the following provision: "In the event of any inconsistency between the binder and the policy, the policy language shall control unless the parties agree to an amendment." [*Id.* at p. 8]. The formal Starr Policy issued included the following provision:

**APPLICATION OF LEAD POLICY PROVISIONS:**

> In respect of the perils hereby insured against this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and Limits of Liability and the renewal agreement, if any, AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the Policy(ies) of the Lead Primary Insurer(s) prior to the happening of a loss for which claim is made hereunder and should any alteration be made in the premium for the Policy(ies) of the Lead Primary Insurer(s), then the premium hereon may be adjusted accordingly.

[Doc. 106-3, p. 16, ¶ 2].

Assuming the 40% Vacancy Exclusion applies, the court notes that the evidence submitted indicates that Garnett Inn's occupancy rate was 43.64% during December of 2017. [Doc. 106-6]. However, the evidence submitted is insufficient for the court to determine whether the Garnett Inn had an average occupancy rate of less than 40% for more than 30 continuous days.

For these reasons, questions of fact remain as to Mahalxmi's breach of contract claim for which additional evidence is required. Thus, judgment on the briefs and evidentiary materials that have been submitted is not appropriate.

## IV.    Conclusion

WHEREFORE, the court concludes that Mahalxmi's breach of contract claim is not time barred.  Further, the court concludes that Steadfast and Starr incorrectly denied Mahalxmi's claim on the ground that the loss is not covered under the terms of the Vacancy Exclusion that precluded coverage for hotel/motel properties with an average occupancy rate of less than 60% for more than 30 continuous days.  Thus, judgment on the briefs is not appropriate.

IT IS FURTHER ORDERED that the parties shall appear before the court for a status conference on January 14, 2022 at 1:30 p.m.

DATED this 23rd day of December, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE